UNITED STATES BANKRUPTCY COURT    FOR PUBLICATION
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

               Case No. 08-72443-reg

MICHAEL LEMMA and LUBA LEMMA,
               Chapter 13

       Debtors.
-------------------------------------------------------------x

**APPEARANCES:**

   Michael A. Kinzer
   Attorney for Debtors and Catherine Lemma
   384 West Main Street
   Babylon, New York 11702


   Allan B. Mendelsohn
   Zavatsky Mendelsohn & Levy, LLP
   Attorneys for Washington Mutual Bank, F.A.
   P.O. Box 510
   33 Queens Street
   Syosset, New York 11791-0510

HON. ROBERT E. GROSSMAN, United States Bankruptcy Judge:

## MEMORANDUM OPINION

   Before the Court is a motion filed by Michael Lemma and Luba Lemma ("Debtors") seeking a determination that the scheduling of the foreclosure sale of their residence located in Levittown, NY (the "Property") by Washington Mutual Bank, F.A. (the "Bank") violates the co-debtor stay provision of section 1301(a) of the United States Bankruptcy Code because the Bank never moved to terminate the co-debtor stay as to Catherine Lemma ("Co-obligor") (the "Motion").  The Bank, a secured creditor of Debtors, filed opposition to the motion.

   After reviewing the parties' submissions and considering the arguments presented at the hearing on August 25, 2008, the Court granted the Motion.  The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.


**I.   JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

## II.    FACTS AND PROCEDURAL HISTORY

On September 27, 1996, Debtors, along with Co-obligor and her late husband Joseph Lemma executed a note and mortgage in favor of the Bank on the Property.[1]  Debtors defaulted under the terms of the note and mortgage and the Bank commenced a foreclosure action in the Supreme Court of the State of New York in February 2006.  A judgment of foreclosure was granted on February 26, 2007, against Debtors, Joseph Lemma, and Co-obligor.

On June 24, 2007, Michael Lemma filed a petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") which was dismissed on October 30, 2007. Subsequently on November 19, 2007, Luba Lemma filed a petition for relief likewise under Chapter 13 which was dismissed on February 21, 2008.  Shortly thereafter, Debtors filed the instant petition on May 12, 2008, for relief under Chapter 13 of the Bankruptcy Code.  Because of Debtors' prior filings, which were pending within the preceding one year period of the instant petition, the automatic stay of an action afforded under section 362(a) terminated thirty days from the filing of the instant case pursuant to section 362(c)(3)(A).  Seeking to extend the automatic stay beyond its statutory expiration date, Debtors filed a motion pursuant to section 362(c)(3)(B) on May 20, 2008.

The Bank filed an Affirmation in Opposition to the Debtor's motion to extend the automatic stay on May 29, 2008, alleging that Debtors failed to provide clear and convincing evidence that an extension of the automatic stay was warranted.  The Bank did not seek relief from the co-debtor stay.

The motion to continue the automatic stay pursuant to section 362(c)(3)(B) was heard before this Court on June 2, 2008. This Court denied the motion by order dated June 16, 2008, and the automatic stay under section 362(a) expired on June 12, 2008.  Thereafter, the Bank scheduled a foreclosure sale to take place on August 26, 2008.  On August 19, 2008, Debtors filed the Motion asserting that the Bank's scheduling of the foreclosure sale violates the co-debtor stay provision of section 1301(a) because the Bank never moved to terminate the co-debtor stay.

## III.    DISCUSSION

The question before the Court is whether the co-debtor stay applicable to this case pursuant to section 1301 of the Bankruptcy Code prevents the Bank from proceeding with a foreclosure sale of the Property despite the fact that the automatic stay applicable to the Debtors has been terminated by operation of section 362(c)(3)(A).  Specifically, does section

---

[1]The note and mortgage was executed in favor of Bank United which subsequently merged with Washington Mutual Bank, F.A.

2

362(c)(3)(A) limit the applicability of the co-debtor stay under section 1301 of the Bankruptcy Code?

Section 1301, "Stay of Action Against Codebtor," provides in pertinent part:

(a)     [A]fter the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt.

11 U.S.C. § 1301(a).

Section 1301 applies to "codebtors" -individuals who are liable on certain debts with the debtor or that secured such debt- and only to "consumer debts." 11 U.S.C. § 1301(a). The Bank does not dispute that Co-obligor is an individual who is liable on a debt with Debtors, and thus is a co-debtor for the purposes of section 1301. However, the Bank disputes that the residential mortgage is a "consumer debt."

## A.    Consumer Debt

A "consumer debt" is a debt incurred by an individual "primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Although there is no case law binding in this Circuit, the majority of courts addressing the issue of consumer debt hold that a mortgage lien secured by real property is a consumer debt. *In re Kelly*, 841 F.2d 908, 913 (9th Cir. 1988); *In re Davis*, 378 B.R. 539, 546-47 (Bankr. N.D. Ohio 2007); *In re Hall*, 258 B.R. 45, 50 (Bankr. M.D. Fla. 2001) (majority position is the better reasoned on the issue that purchase money mortgage on debtor's former residence is a consumer debt); *In re Vianese*, 192 B.R. 61 (Bankr. N.D.N.Y. 1996) (mortgage on debtors' residence and home equity loan are debts incurred primarily for personal purposes). In determining whether a debt falls within the statutory definition, these courts look to whether the debt incurred serves a family or household purpose, *In re Kelly*, 841 F.2d at 913, or whether the debt was incurred with an eye toward profit, *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988). "It is difficult to conceive of any expenditure that serves a 'family . . . or household purpose' more directly than does the purchase of a home and the making of improvements thereon." *In re Kelly*, 841 F.2d at 913.

The Bank relies on *In re Ikeda*, 37 B.R. 193 (Bankr. Haw. 1984) for the proposition that a mortgage lien secured by real property is not a consumer debt. In *In re Ikeda*, the court referenced the specific comments of senators that "[a] consumer debt does not include a debt to any extent the debt is secured by real property" and concluded that the intent of Congress was clear that "consumer debts" do not include liens secured by real property. *Id.* at 195 (citing 124 Cong. Rec. S17,406 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini)).[2]

---

[2]In addition to *In re Ikeda*, at least two other courts have relied on the legislative history of the "consumer debt" provision. Nevertheless, the holdings of these courts are in accord with this Court's conclusion that a mortgage loan secured by a residence is a "consumer debt." The first, *In re Nenninger*, 32 B.R. 624, 625-26 (Bankr. W.D. Wis.

This Court concludes that a note secured by a mortgage lien on a personal residence is a "consumer debt." The Court declines to look beyond section 101(8), into its legislative history to interpret its meaning, because the statute is unambiguous on its face. The only requirements that the debt must meet under the statutory definition is that it is incurred by an individual and primarily for a personal, family, or household purpose. 11 U.S.C. § 101(8). There is no language here that requires the debt to be an unsecured debt or one that is secured by something other than real property. In fact, "debt" is defined by the Bankruptcy Code as liability on a claim, 11 U.S.C. § 101(12), and "claim" is defined in pertinent part as a secured or unsecured right to payment, 11 U.S.C. § 101(5). Where the statute's language is plain, an inquiry into its meaning ends with the language of the statute and the sole function of the court is to enforce it according to its terms. *United States v. Ron Pair Enter*s., 489 U.S. 235, 241 (1989); *see In re Kelly*, 841 F.2d at 912 n.3 (maintaining that the explanatory comments of key legislators cannot be utilized to expand the plain language of the Congressional statement which would be the only authoritative indication of legislative intent); *In re Gunderson*, 76 B.R. 167, 168-69 (Bankr. Or. 1987) (rejecting *Ikeda's* review of legislative history and finding that the congressional statements confuse rather than clarify statutory construction of the "consumer debt" definition).

Further, the Court does not find *Ikeda* determinative in this case because the *Ikeda* court relied on *In re Stein*, 18 B.R. 768 (Bankr. S.D. Ohio, 1982) in support of its proposition. *In re Ikeda*, 37 B.R. at 195. The court's holding, however, in *In re Stein* was based on its finding that a large portion of the debt that was secured by the real property encompassed obligations relating directly to a family farm, which was operated for a business purpose and not for a personal purpose. 18 B.R. at 769. Here, on the other hand, the debt was incurred solely for a personal purpose, to purchase a residence. The Bank does not assert and has not presented any evidence that Debtors were motivated by profit in incurring the debt. Finding no dispute that the loan was incurred by Debtors and Co-obligor to purchase a home for the purpose of residing in it, the Court finds that the debt falls within the definition of a "consumer debt."

## B.    Effect of Section 362(c)(3)(A) on Section 1301

Having determined that section 1301 applies, the Court now considers whether the statutory termination of the automatic stay as provided in section 362(c)(3)(A) has any limiting effect on the co-debtor stay imposed by section 1301.

---

1983), while referencing the congressional statements, nevertheless maintained that the proper test for determining a consumer debt is the purpose of the loan. The court concluded that a loan to purchase a commercial campground could not be a consumer debt. The second case that referenced the provision's legislative history, *In Re Burgess*, 22 B.R. 771 (Bankr. M.D. Tenn. 1982), held that a debt incurred to purchase property to be used as debtor's home was a "consumer debt." The court specifically noted the legislative history and congressional remarks and concluded that an unsecured obligation for the purchase of a home could be a consumer debt.

4

Section 362(c)(3)(A) of the Bankruptcy Code, which became effective pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA), limits the automatic stay provided under section 362(a) in certain cases.  Section 362(c)(3) provides:

> [I]f a single or joint case is filed by or against debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1 year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)-

> A.    The stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case.

11 U.S.C. § 362(c)(3)(A).

This new section 362(c)(3) provides for the termination of the automatic stay imposed by section 362(a) unless a debtor brings on a motion to extend the automatic stay prior to the thirtieth day after the filing date.  In order to place this new section in the proper context, it is useful to analyze it in relation to existing case law concerning the interplay between the automatic stay imposed by section 362(a) and the section 1301 co-debtor stay.  Prior to the enactment of BAPCPA, courts consistently found that the co-debtor stay under section 1301 was unrelated to the stay imposed by section 362(a).  *Morris v. Zabu Holding Inc*. (*In re Zabu*), 385 B.R. 823, 829 n.6 (E.D. Va. 2008) (section 1301 and section 362 are independent provisions).  Section 362(a) provides that the filing of a petition in bankruptcy operates to stay certain actions.[3]  The termination of the section 362(a) automatic stay upon relief sought by a creditor under section 362(d), does not result in the termination of the section 1301 co-debtor stay.  *See Harris v. Margaretten & Co., Inc.* (*In re Harris*), 203 B.R. 46 (Bankr. E.D. Va. 1994), *aff'd*, 100 F.3d 950 (4th Cir. 1996) (a foreclosure sale scheduled post-petition was void in violation of the co-debtor stay where the court had previously granted relief from the automatic stay under section 362 but had not granted co-debtor relief); *In re Prud'Homme*, 161 B.R. 747 (Bankr. E.D.N.Y 1993) (movant sought to lift the stay under section 362(d) as to the debtor and separately under section 1301(c)(3) as to co-owner); *In re Jones*, 106 B.R. 33 (Bankr. W.D.N.Y. 1989) (creditor who had repossessed a vehicle violated the co-debtor stay under section 1301 even though the section 362(a) stay was not operational).

Just as the termination of the stay in section 362(a) will not terminate the co-debtor stay imposed by section 1301, so too does the Court find that the new thirty-day automatic termination of the stay applicable to Debtors pursuant to section 362(c)(3)(A) does not terminate the co-debtor stay imposed by section 1301.  There is no language in section 362(c)(3) that states or implies that when the stay terminates automatically with respect to the debtor by reason of his prior filings, the co-debtor stay terminates as well.  Similarly, section 1301 sets forth the instances when the co-debtor stay applies as well as exceptions to those instances; the

---

[3] Section 362(a) provides in pertinent part that a petition filed under Section 301, 302, or 303, operates as a stay, applicable against all entities, of certain actions.

termination of the automatic stay pursuant to section 362(c)(3) is not a listed or implied exception.

The Bank relies in part on legislative history to support its argument that section 1301 was clearly not intended to provide relief to co-obligors in a situation where a debtor couple filed three petitions between the two of them, each filed on the eve of a foreclosure sale. The Bank asserts that the purpose of the co-debtor stay was to insure that the creditor could not demand payment from the co-obligors while they were precluded from going forward against the debtor. Accordingly, the Bank argues once the automatic stay was terminated, and a debtor no longer had a right to cure the default, the purpose of the co-debtor stay is obviated.

First, the Court sees no need to resort to an analysis of the legislative history because the statutory language of section 362(c)(3) is clear. *See United Air Lines, Inc. v. McMann*, 434 U.S. 192, 199 (1977) (legislative history, . . . by traditional canons of interpretation is irrelevant to an unambiguous statute); *accord Valentine v. Mobil Oil Corp.*, 789 F.2d 1388, 1391 (9th Cir. 1986). In a similar case, *King v. Wells Fargo Bank, N.A.* (*In re King*), 362 B.R. 226 (Bankr. Md. 2007), the court considered whether when section 362(c)(4) limits the stay of section 362(a) it also limits the stay of section 1301. In that case, the debtor had two previous cases dismissed in the year prior to her filing a petition. Accordingly, pursuant to section 362(c)(4)(A)(I) the stay under section 362(a) did not go into effect at all. The court concluded that there was nothing in section 1301 that limited the applicability of the co-debtor stay in cases where section 362(c)(4) is applicable. Because the statute is clear on its face, the court declined to look at the statutory intent - that the co-debtor stay is designed to protect a debtor by insulating him from indirect pressures from his creditors exerted through his cosignor. The court noted that Collier on Bankruptcy maintained that none of the new exceptions to section 362(a) affect the co-debtor stay of section 1301 and that case law prior to the BAPCPA amendments routinely recognized that the co-debtor stay of section 1301 and the automatic stay of section 362 were independent provisions.

Second, there is evidence that Congress intended to keep the two protections independent. One of the provisions Congress added under BAPCPA was section 365(p)(3). The section provides that a lease is deemed rejected if a debtor lessee does not assume the lease in the plan and that the stay under sections 362 and 1301 is automatically terminated. "The specific reference in section 365(p)(3) to the termination of both the automatic stay of section 362 and co-debtor stay of section 1301 further supports that Congress understood that the two stays are separate and distinct." *In re King*, 362 B.R. at 232.

The Bank contends that *King* is not controlling because it is distinguishable on the facts. In *King*, the court found that the debtor's third filing was done in good faith, and that it was appropriate to impose the automatic stay. The Bank seizes on the court's finding that the third petition was not filed in bad faith and ignores the court's analysis of section 1301 and its conclusion that the co-debtor stay is separate and distinct from the automatic stay applicable to a debtor. This Court is not persuaded that the finding by the *King* court that the debtor's filing was in good faith was a prerequisite for the finding that the section 1301 co-debtor stay applied. A debtor's good faith is pertinent in determining whether the automatic stay should be extended

6

beyond thirty days under section 362(c)(3)(B).  Good faith, however, has no bearing on the analysis of whether the co-debtor stay of section 1301 is applicable.

### C.    Retroactive Relief from the Co-Debtor Stay

As part of its opposition to the Motion, the Bank, alternatively, requests the affirmative relief of nunc pro tunc annulment of the section 1301 stay.  The co-debtor stay may be terminated upon a showing that: the debtor does not propose to pay the amount owed under the plan; the nondebtor party actually received the consideration for the claim held by the creditor; or that the creditor's interest would be irreparably harmed by the stay.  11 U.S.C. § 1301(c).  A motion under section 1301 must not only make a showing on one of these elements for relief, it must also be made in compliance with the procedural rules on at least 10 days' notice to affected parties. See E.D.N.Y. LBR 9006-1.  The Bank has failed to satisfy either its substantive or procedural burdens.  On June 2, 2008, when this Court first considered the issue of the automatic stay pursuant to Debtors' motion to extend the automatic stay beyond thirty days, the Bank, while objecting to such an extension in relation to Debtors, did not seek to terminate the stay in relation to Co-obligor under section 1301(c).  To the extent the Bank argues now pursuant to section 1301(c)(1) that Catherine Lemma is an individual who actually received the consideration, the Bank must still seek relief from the stay by motion.  *See In re Jones*, 106 B.R. at 35; *In  re Francis*, 15 B.R. 998, 1000 (Bankr. E.D.N.Y. 1981) (section 1301 itself does not include in subsection (a)'s list of express exceptions from the stay the situation where "the debtor was really the co-debtor," but instead provides in subsection (c) that the court shall grant relief in such a circumstance).

Putting aside the procedural infirmities of the Bank's request, the Court declines to retroactively terminate the co-debtor stay imposed by section 1301 in order to permit the Bank to move forward with the foreclosure sale.  Generally, a court may annul a stay retroactively under limited circumstances.  *In re King*, 362 B.R. at 234; *In re Harris*, 203 B.R. at 50.  Some courts have noted that annulment of the co-debtor stay is appropriate only in extreme circumstances, while others have stated that "annulment may be allowed in a unique situation to balance the equities between the parties."  *In re Harris*, 203 B.R. at 50; *see In re Morris*, 385 B.R. at 829-30 (the weight of the case law support the use of the balancing of the equities test); *In re Myers*, 491 F.3d 120, 129 (3d Cir. 2007) (noting that "[e]ven those cases that have subscribed to a narrow conception of the power to retroactively annul the stay have affirmed that balancing the equities is the appropriate test").

In *In re Morris*, the bankruptcy court initially set aside a foreclosure sale because the creditor failed to obtain relief from the co-debtor stay even though it was granted relief from the stay as to the debtor. 385 B.R. at 827. Upon reconsideration and after balancing the equities, the bankruptcy court retroactively granted relief from the co-debtor stay, which validated the foreclosure sale.  *Id*. at  827-28.  On appeal, the court found that balancing the equities was required.  *Id*. at 831.  The court affirmed the bankruptcy court's annulling the co-debtor because the buyer at the sale was an innocent third party without knowledge of the co-debtor violation, the debtor failed to make plan payments, and the debtor waited until four months after the violation of the co-debtor stay before seeking recourse. *Id*.  Here, Debtors immediately contacted

7

the Bank upon learning that the Bank scheduled a foreclosure sale and sought recourse from the court.  In addition, while the Bank already took steps toward the sale, the Court does not find that the equities tip in the Bank's favor because the sale has not yet taken place, there is no buyer who would be unjustly harmed, and the Bank was well aware of the fact that there was a co-obligor on the debt due the Bank.

## V.    CONCLUSION

Based on the foregoing, this Court holds that a mortgage loan secured by real property that is the Debtors' residence is a "consumer debt" and thus section 1301 is applicable to Co-obligor.  The co-debtor stay provided for by section 1301 is not terminated by the statutory termination of the stay applicable to debtors pursuant to section 362(c)(3)(A).  Since the co-debtor stay is in effect and the Bank has not sought relief from the stay, the Bank's scheduling of a foreclosure sale on the Property is a violation of that stay.

An Order in accordance with this Memorandum Opinion was entered on August 25, 2008.

Dated: September 9, 2008                               _____*/s/ Robert E. Grossman*_____
            Central Islip, New York                      Robert E. Grossman
                                                                         United States Bankruptcy Judge