| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------x<br>In re:<br><br>MICHAEL LEMMA and LUBA LEMMA,<br><br>                  Debtors.<br>-------------------------------------------------------------x | FOR PUBLICATION<br><br>Case No. 08-72443-reg<br><br>Chapter 13 |

**APPEARANCES:**

    Michael A. Kinzer
    Attorney for Debtors and Catherine Lemma
    384 West Main Street
    Babylon, New York 11702


    Allan B. Mendelsohn
    Zavatsky Mendelsohn & Levy, LLP
    Attorneys for Washington Mutual Bank, F.A.
    P.O. Box 510
    33 Queens Street
    Syosset, New York 11791-0510

HON. ROBERT E. GROSSMAN, United States Bankruptcy Judge:

## MEMORANDUM OPINION

       Before the Court is a motion by Washington Mutual Bank, F.A. (the "Bank") seeking to terminate the codebtor stay as to Catherine Lemma ("Co-obligor") and seeking relief pursuant to 11 U.S.C. § 362(d)(4)(B) that in the event of any future filings by Michael Lemma, Luba Lemma ("Debtors") or Co-obligor, the automatic stay would not go into effect as to the Bank with respect to certain real property constituting Debtors' residence. ("Motion"). Debtors and Co-obligor oppose the Motion.

       After reviewing the parties' submissions and considering the arguments presented at the hearing on September 17, 2008, the Court reserved on the Motion. The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

**I.     JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

**II.    FACTS AND PROCEDURAL HISTORY**

On September 27, 1996, Debtors, along with Co-obligor and her late husband Joseph Lemma executed a note secured by a mortgage in favor of the Bank with respect to Debtors' residence located in Levittown, New York (the "Property").[1] Debtors defaulted under the terms of the note and mortgage and the Bank commenced a foreclosure action in the Supreme Court of the State of New York in February 2006. A judgment of foreclosure was granted on February 26, 2007, against Debtors, Joseph Lemma and Co-obligor.

On June 24, 2007, Michael Lemma filed a petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") which was dismissed on October 30, 2007. Subsequently on November 19, 2007, Luba Lemma filed a petition for relief likewise under Chapter 13 which was dismissed on February 21, 2008. Shortly thereafter, Debtors filed the instant petition on May 12, 2008, for relief under Chapter 13 of the Bankruptcy Code. Because of Debtors' prior filings, which were pending within the preceding one year period of the instant petition, the automatic stay of an action afforded under section 362(a) was set to terminate thirty days from the filing of the instant case pursuant to section 362(c)(3)(A) of the Bankruptcy Code. Seeking to extend the automatic stay beyond its statutory expiration date, Debtors filed a motion pursuant to section 362(c)(3)(B) on May 20, 2008 ("Motion to Extend Stay"). The Bank filed opposition to the Motion to Extend Stay, alleging that Debtors failed to provide clear and convincing evidence that an extension of the automatic stay was warranted.

The Court denied the Motion to Extend Stay by order dated June 16, 2008. As a result, the automatic stay applicable to the Bank under section 362(a) of the Bankruptcy Code expired on June 12, 2008. Thereafter, the Bank scheduled a foreclosure sale to take place on August 26, 2008. In the meantime, Debtors' first amended plan, filed on July 16, 2008 (the "Plan"), was confirmed by order dated July 28, 2008. Pursuant to the Plan, the Bank is to receive 100% of the prepetition arrears in the sum of $66,907.08 over sixty 60 equal monthly payments, and Debtors are to make all post petition payments outside the Plan. The amount of prepetition arrears to be paid under the Plan match the amount of prepetition arrears asserted by the Bank in its proof of claim filed on May 28, 2008. The Bank, which was served with the Plan and with notice of the hearing on confirmation of the Plan, did not file objections to confirmation.

---

[1]The note and mortgage was executed in favor of Bank United, which subsequently merged with the Bank.

Commencing in June, 2008, Debtors made the $2,000 monthly payments to the Trustee as called for under the Plan. Debtors also made the post-petition monthly mortgage payments to the Bank. According to Debtors, the Bank rejected all but one of the post-petition monthly mortgage payments. According to Michael Macco, the Chapter 13 trustee (the "Trustee"), the Bank has rejected all of the plan payments tendered by the Trustee.

On August 19, 2008, Debtors filed a motion asserting that the Bank's scheduling of the foreclosure sale post-petition violated the codebtor stay provision of section 1301(a) of the Bankruptcy Code because the Bank never moved to terminate the codebtor stay. The Bank opposed the motion, and by memorandum decision dated September 9, 2009, this Court granted Debtors' motion and held that the codebtor stay had not been terminated by the statutory termination of the stay applicable to debtors pursuant to section 362(c)(3)(A).

Pursuant to the Motion, which was filed on August 25, 2008, the Bank seeks relief from the codebtor stay pursuant to sections 1301(c)(1) and (c)(2) of the Bankruptcy Code, and seeks relief under Bankruptcy Code section 362(d)(4)(B) that in the event of any future filings by Debtors or Co-obligor, the automatic stay will not go into effect as to the Bank. Debtors and Co-obligor filed opposition to the Motion, and the Bank filed reply papers.

## III. DISCUSSION

### A. Relief From the Codebtor Stay Under 11 U.S.C. § 1301(c)(1)

The Bank seeks relief from the co-debtor stay imposed by section 1301(a) of the Bankruptcy Code, claiming that such relief is warranted under sections 1301(c)(1) and (c)(2). Section 1301(c) of the Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that -
> (1) as between the debtor and the individual protected under subsection (a) of this section, such individual received the consideration for the claim held by such creditor;
> (2) the plan filed by the debtor proposes not to pay such claim; or
> (3) such creditor's interest would be irreparably harmed by continuation of such stay.

11 U.S.C. § 1301(c).

According to the Bank, grounds exist to vacate the codebtor stay under subsection (c)(1) because Co-obligor received the proceeds from the mortgage which forms the basis for the claim held by the Bank. The Bank asserts that the purpose of the codebtor stay is to protect parties who guaranteed debts of the debtor and received no consideration for the claim in question. Therefore, if the codebtor received any consideration from the transaction, the codebtor is not

entitled to the protections provided under the codebtor stay, and the Court must grant the creditor relief from the codebtor stay under section 1301(c)(1).

The Bank misinterprets the purpose of the codebtor stay, the grounds for relief from the codebtor stay under this subsection and the relevant case law. Under section 1301(a) of the Bankruptcy Code, a creditor is stayed from pursuing a Chapter 13 debtor's co-obligor until the Chapter 13 case is "closed, dismissed, or converted to a case under chapter 7 or 11 of this title."[2] 11 U.S.C. § 1301(a)(2). The purpose of the codebtor stay is to protect the debtor, not the nondebtor obligor. The legislative history regarding the codebtor stay states that its purpose is to protect the debtor from "indirect pressure from a creditor exerted through his friends or relatives to favor or prefer that creditor." H.R. Rep. No. 95-595, at 121 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5787, 6081. The codebtor is an incidental beneficiary of the codebtor stay, which benefit is not unlimited. The Bank may seek relief from the codebtor stay to pursue the codebtor under subsection (c)(1), (c)(2) or (c)(3) of this section. Section 1301(c)(1) provides that relief from the codebtor stay is warranted where the codebtor received "the consideration" for the claim in question. Courts interpreting this subsection focus on the debtor's role in the transaction, and find that the codebtor stay may be lifted only where the debtor is in fact the "codebtor" on the obligation, such as the guarantor on the debt, and received none of the consideration. *See In re Rhodes,* 85 B.R. 64, 65 (Bankr. N.D. Ill. 1988) (vacatur of the codebtor stay is appropriate only where the nonfiling codebtor was the "exclusive recipient of the consideration") and *In re Motes,* 166 B.R. 147, 149 (Bankr. E.D. Mo. 1994) (court will lift the codebtor stay only where the debtor did not receive any consideration for the loan).

In the instant case, the Bank does not deny that Debtors received consideration from the transfer. In fact, there is no dispute that Debtors were the primary beneficiaries of the transaction. Therefore, based on the facts of this case and applicable case law, there are no grounds to vacate the codebtor stay under section 1301(c)(1).

### B. Relief From the Codebtor Stay Under § 1301(c)(2)

The Bank also asserts that relief from the codebtor stay is warranted under section 1301(c)(2). The Bank argues that because the automatic stay was terminated by operation of § 362(c)(3), the Bank is entitled to assert its contractual rights set forth in the note and mortgage under applicable state law. Since the Bank obtained a judgment prepetition, the Bank claims it is entitled under state law to payment of the full amount of the judgment immediately, not over time. Therefore, because the Plan does not provide for payment of the entire amount of $201,681.68 immediately, the Bank's claim is not being satisfied in full as required by § 1301(c)(2) of the Bankruptcy Code. As a result, the Court must lift the codebtor stay. Debtors assert that the Plan does pay the Bank's claim in full because it provides for the payment of

---

[2]The codebtor stay does not apply in cases where the codebtor incurred the obligation in the normal course of such individual's business. 11 U.S.C. § 1301(a)(1). This exception is not applicable in this case.

100% of the prepetition arrears over the life of the Plan. The Plan reinstates the note under the original terms of the mortgage and provides that Debtors are required to make all post petition payments. Debtors assert that since the terms of the Plan serve to cure all prepetition defaults and reinstates Debtors' obligation to make monthly mortgage payments post petition, the Bank's claim is being paid in full. Therefore, relief from the codebtor stay under § 1301(c)(2) of the Bankruptcy Code is not warranted.

The distinction between the Bank's position and Debtors' revolves around whether the treatment of the Bank's claim under the Plan provides for full payment of the Bank's claim as mandated by the statute. If the Bank's position prevails then the codebtor stay must be vacated based on the Plan's failure to provide for immediate payment of the full amount of the outstanding debt as required by state law. If Debtors are correct then the payment of the Bank's claim in full as set forth in the Plan satisfies the requirements imposed by § 1301(c)(2) of the Code.

To resolve this issue the Court must determine whether the Plan proposes to pay the Bank what it is entitled to receive under § 1301(c)(2) of the Bankruptcy Code. Under this subsection, there is an understanding that a creditor subject to the codebtor stay is entitled to receive payment of the full amount of what it is owed. A creditor's rights against the codebtor are preserved to the extent that the plan does not provide for payment of the debt in full. "If the full debt is not paid through the plan, creditors are not forced to wait until the plan is complete to receive the money they are unquestionably owed from cosigners" and relief from the codebtor stay is appropriate. *Southeastern Bank v. Brown,* 266 B.R. 900, 908 (S.D. Ga. 2001). The legislative history of this provision supports this understanding. *See* H.R. Rep. No. 95-595, at 122 (1977), *reprinted in* 1987 U.S.C.C.A.N. 6083 (as a result of the codebtor stay, the creditor is required to wait along with all of the other creditors "for that portion of the debt that the debtor will repay under the plan."). If the full amount of the claim is not paid under the plan, the creditor should not have to wait until the case is closed to pursue the remainder from the codebtor.

The Bank does not allege that the dollar amount it is receiving under the Plan is less than what is owed. Rather, the Bank asserts that the timing of the payments is what mandates relief from the codebtor stay. In support of its argument, the Bank cites to *In re Schaffrath,* 214 B.R. 153 (6th Cir. B.A.P. 1997). However, *In re Schaffrath* stands for the proposition that relief from the codebtor stay shall be granted where the debtor's plan does not pay the entire dollar amount of a creditor's claim including any deficiency. *Id.* at 155. *In re Schaffrath* does not address whether the Bank is entitled to immediate payment of its claim as a result of the termination of the stay under § 362(c)(3) of the Bankruptcy Code.

The Court is not aware of any bankruptcy case which supports the Bank's argument. Each of the relevant cases turn solely on whether the amount being paid under the plan is sufficient to pay the claim in full. *See In re Garrett,* 36 B.R. 432 (Bankr. M.D. Tenn. 1984); *In re DiDomizio,* 11 B.R. 357 (Bankr. D. Conn. 1981); *Cain v. Cadle Co.*, 2007 WL 2852345 (N.D.Fla. Sep 30, 2007); and *Southeastern Bank v. Brown,* Id.

The Bank does not point to any Bankruptcy Code provision in support of its argument. Instead, the Bank relies on its understanding of the effect of preconfirmation termination of the automatic stay on the rights and obligations of Debtors and the Bank under the Bankruptcy Code. The Bank sees the termination of the stay as a return to its relationship with Debtors as governed under state law. As a result, the Bank has an unconditional right to receive payment in full as the note and mortgage were accelerated prepetition. The Bank argues that once the note was reduced to judgment, Debtors no longer had the right to cure the defaults or reinstate the note. Under the Bank's theory, it is entitled to relief from the codebtor stay and it may continue with its foreclosure action in state court post-confirmation. The Bank is correct that but for the existence of the codebtor stay, termination of the stay under § 362 permitted the Bank to exercise its rights under the note and mortgage in state court. What the Bank fails to recognize, and what is at the heart of this case, is that the termination of the stay under § 362 did not terminate Debtors' right to cure the prepetition arrears and reinstate the mortgage.

Chapter 13 of the Bankruptcy Code permits a debtor to cure prepetition defaults under a mortgage and return to making monthly payments even if the mortgage has been accelerated prepetition. The relevant provisions of § 1322(b) of the Bankruptcy Code provide:

> (b) . . . the plan may— . . .
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
>
> (3) provide for the curing or waiving of any default; . . .
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

The concept of "cure" under subsections (b)(3) and (b)(5) includes the power to de-accelerate a mortgage, pay out the prepetition arrears under a plan and reinstate the original payment schedule. *In re Taddeo,* 685 F.2d 24, 26, 27 (2nd Cir. 1982) ("*Taddeo*"). In *Taddeo*, the Court of Appeals for the Second Circuit recognized that the curing of a default and the reinstatement of the postpetition mortgage does not constitute an impermissible modification of a home mortgage. *Id.* at 27. The Bank does not challenge *Taddeo*, but argues that because the stay under § 362 terminated prior to confirmation, *Taddeo* does not apply. Therefore, Debtors lost the right to cure and reinstate the mortgage and note under a plan.

The Bank's position is not supported by the Bankruptcy Code or relevant case law. The only effect termination of the stay had on this case was to permit the Bank to proceed against

Debtors in state court. However, there is nothing in the Code to even suggest that once the stay is terminated, Debtors can no longer bind the Bank under a plan which implements the cure and reinstatement provisions provided in the Bankruptcy Code. Furthermore, under the Bankruptcy Code's statutory scheme, the confirmed plan is a binding agreement which supersedes any prior agreement between the debtor and its creditors. Section 1327(a) of the Code provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Case law is clear that a confirmation order is *res judicata* as to the amount of a creditor's claim, its treatment under the plan and any other issues that were or could have been decided in the confirmation process. *In re Layo*, 460 F.3d 289, 293-94 (2nd Cir. 2006); *Marlow v. Sweet Antiques,* 216 B.R. 975, 979 (Bankr. N.D. Ala. 1998); and *In re Sullivan,* 321 B.R. 306, 308 (Bankr. M.D. Fla. 2005).

After a plan is confirmed, the creditors included in the plan can no longer seek relief from the automatic stay based on any facts which occurred preconfirmation. *Green Tree Financial Corp. v. Garrett (In re Garrett),* 185 B.R. 620, 623 (Bankr. N.D. Ala.. 1995) ("*Garrett"),* citing *Lawson v. Lackey*, 148 B.R. 626, 627 (Bankr. N.D. Ala. 1992). The terms of the plan as confirmed fix the legal rights of the parties and the only cause for relief from the stay after confirmation is the debtor's material failure to adhere to the payment terms set forth in the plan. *Garrett*, 185 B.R. at 623 (other citations omitted).

Even where the stay is terminated prior to confirmation, the confirmed plan binds such creditor so long as the creditor's claim is treated under the plan, the plan was served on the creditor and the plan does not contain any language specifically preserving the rights of the parties under the prior order vacating the automatic stay. *See Garrett,* 185 B.R. at 623 (section 1327(a) of the Bankruptcy Code requires such a creditor to accept payments under the terms of a plan and unless the debtor defaults under the plan, the creditor can no longer proceed with foreclosure)**;** *Diviney v. NationsBank (In re Diviney)*, 225 B.R. 762 (B.A.P. 10th Cir. 1998) (once plan is confirmed, terms of a prior order conditionally vacating the stay no longer binding); and *In re Moffitt,* 2007 WL 1118287 (Bankr. N.D. Tex. 2007).

Because the Bank was served with the Plan and with notice of the hearing on confirmation, the terms of the Plan now govern the rights of the parties. The Bank is now barred by *res judicata* from arguing that Debtors had no right to cure and reinstate the mortgage and note. The results are not altered by the fact that in this case, the stay was terminated by operation of law under Bankruptcy Code section 362(c)(3)(A), as opposed to section 362(d) of the Bankruptcy Code. Section 362(c)(3)(A) of the Bankruptcy Code, which became effective pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), limits the automatic stay imposed under section 362(a) in certain cases. Section 362(c)(3) provides:

> [I]f a single or joint case is filed by or against debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1 year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)-

7

> A. The stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case.

11 U.S.C. § 362(c)(3)(A).

Post BAPCPA, a majority of courts have extended the rationale of *Garrett* to find that even where the stay has been terminated preconfirmation by operation of law under section 362(c)(3) of the Bankruptcy Code, the debtor still retains the right to bind the creditors under a confirmed plan. *See Kurtzahn v. The Sheriff of Benton County, Minn. (In re Kurtzahn),* 342 B.R. 581 (Bankr. D. Minn. 2006) (where the stay was terminated under section 362(c)(3) but debtor later obtained confirmation of plan, the creditor was bound by the plan terms under section 1327(a)); *In re Fleming,* 349 B.R. 444 (Bankr. D.S.C. 2006) (automatic stay would not be extended but debtor could still confirm a plan which would bind all of the creditors). Under these cases, the creditor must preserve its rights after the stay is vacated by objecting to the plan or by completing the liquidation of the collateral pre-confirmation, or else it is bound to accept the treatment afforded under the confirmed plan. Since the Bank failed to consummate the foreclosure prior to confirmation and did not object to its treatment under the Plan, the Bank is bound by the terms of the Plan.

The Court notes that one court has held that if there are no grounds to extend the automatic stay under section 362(c)(3) or (4), confirmation of a plan will not alter the effect of termination of the stay or interfere with the creditors' right to exercise its remedies in state court, so long as that creditor does not accept post petition mortgage or plan payments. *In re Cline,* 386 B.R. 344 (Bankr. N.D. Ala. 2008). This is a minority position which incorrectly elevates the expiration of the stay under section 363(c)(3) over the express provisions of section 1327(a). As such, this Court declines to follow *In re Cline* and holds that once a plan is confirmed, the plan binds the debtor and its creditors regardless of whether the stay has been vacated prior to confirmation, so long as the debtor remains current under the plan.

### C. Relief under § 362(d)(4)(B)

The Bank also requests entry of an order pursuant to Bankruptcy Code section 362(d)(4)(B) granting *in rem* relief to the Bank in the event of a subsequent filing by Debtors or Co-Obligor. This section states in relevant part:

> with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved either—
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

>    (B) multiple bankruptcy filings affecting such real property.
>
>    If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. § 362(d)(4)(B).

The Bank has the burden of showing that Debtors' petitions were filed as part of a scheme by Debtors and Co-Obligor to defraud the Bank. Although the Bank alleges that there is "ample cause" to grant this relief, the Bank fails to point to anything other than the three filings as cause.   In order to provide cause for granting this relief, the Bank has the burden of establishing that the current filing is part of a scheme, that the scheme involved the transfer of real property or multiple filings, and that the object of the scheme is to hinder, delay **and** defraud the Bank.  *In re Abdul Mauhaimin,* 343 B.R. 159, 167, 168 (emphasis added)**.**  The Bank has not provided any showing that Debtors' actions are evidence of a scheme to defraud the Bank.  In fact, Debtors have been making the plan payments and have attempted to tender the post petition mortgage payments to the Bank, which the Bank has refused  If anything, this evidences a lack of intent by Debtors to defraud the Bank.  Therefore, this request for relief is denied.

### III.   CONCLUSION

For the reasons set forth above, the Motion is denied. The Court shall enter an order in accordance with this Memorandum Opinion.

Dated: Central Islip, New York
       September 29, 2008                         */s/ Robert E. Grossman*
                                                  Robert E. Grossman
                                                  United States Bankruptcy Judge